Marion TURNER *v.* STATE of Arkansas

CR 85-132                                    698 S.W.2d 798

Supreme Court of Arkansas
Opinion delivered November 18, 1985

*William C. MacArthur,* for appellant.

*Steve Clark,* Att'y Gen., by: *Mary Beth Sudduth,* Asst. Att'y Gen., for appellee.

GEORGE ROSE SMITH, Justice. At about 4:30 p.m. on September 11, 1984, the appellant Marion Turner, age 29, shot and killed Albert Lampkin with a semi-automatic .22-caliber rifle. The homicide took place in Johnson Park in Jacksonville, where a number of men were accustomed to gather and spend time. The jury convicted Turner of first-degree murder, as charged, and imposed a sentence of life imprisonment.

A narration of essential parts of the testimony, viewed in a light favorable to the verdict, is sufficient to rebut the first argument, that the State failed to prove premeditation and deliberation.

According to Turner's testimony, earlier that afternoon

Lampkin had threatened to blow Turner's head off. In response to that threat Turner redeemed his rifle from a pawn shop, bought ammunition, loaded and assembled the gun, and put it in a duffel bag. According to the State's witnesses, Turner arrived at the park in his car, alighted, and, carrying the rifle, approached the spot where Lampkin was sitting in his own car. After a brief conversation, during which Turner said Lampkin again threatened him, Turner started shooting and continued shooting after Lampkin fell to the ground. An officer testified that a person had to pull the trigger every time for the gun to fire. The autopsy showed that Lampkin had been hit by ten shots. Turner testified that he thought Lampkin was reaching for a pistol underneath his shirt, but the jury could have found from the proof that he was unarmed and defenseless.

■ The appellant's other argument is that the court should have granted a mistrial, after the State had rested, because an officer who arrived at the scene before Lampkin died testified that Lampkin had no apparent pulse, but he would jerk every 10 or 15 seconds and suck some of the blood in his mouth into his throat. "It appeared that he was trying to get air or trying to sustain Life." There is no indication that the prosecution was attempting to inflame the jury. To the contrary, the officer's description of the dying man was in response to a broad question: "What did you observe when you arrived at the scene?" Turner is not in a position to argue that the consequences of his own brutal attack upon his victim should have been kept from the jury.

We find no prejudicial error in the other rulings disclosed by the abstracts of the proceedings.

Affirmed.

PURTLE, J., not participating.